Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| PAN AMERICAN GRAIN MANUFACTURING CO., INC.<br><br>*Recurrente*<br><br><br>v.<br><br><br>REGISTRO DE MARCAS Y NOMBRES COMERCIALES DEL DEPARTAMENTO DE ESTADO DE PUERTO RICO<br><br>*Recurrido* | KLRA202400201 | Revisión Administrativa procedente del Departamento de Estado, Registro de Marcas y Nombres Comerciales<br><br>Marca: NURISH<br><br>Registro Núm.: 218569<br><br>Número de presentación: 222219-29-0<br><br>Sobre: Rechazo indebido a declaración de primer uso de marca registrada |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de junio de 2024.

Comparece Pan American Grain Manufacturing Co., Inc. (Pan American o recurrente) mediante *Recurso de Revisión de Decisión Administrativa* presentado el 16 de abril de 2024, y nos solicita la revisión de la *Acción Final* emitida el 12 de febrero de 2024, por el Registro de Marcas y Nombres Comerciales del Departamento de Estado del Gobierno de Puerto Rico (Registro de Marcas o recurrido). Mediante el aludido dictamen, el Registro de Marcas rechazó una *Declaración de Primer Uso* de la marca "NURISH" presentada por Pan American.

Por los fundamentos que exponemos a continuación, **revocamos** la *Acción Final* recurrida.

**I.**

Según surge del expediente apelativo, el 3 de octubre de 2017, Pan American presentó ante el Registro de Marcas una *Solicitud de Registro de Marca*[1], con número de presentación 222219-29-0, a los fines de registrar la marca "NURISH", bajo la clase 29, destinada a su uso futuro. Luego de varios trámites, la marca quedó registrada con el número de registro 218569[2].

Posteriormente, el 5 de octubre de 2020, Pan American presentó una *Solicitud de Prórroga para Presentar Declaración de Uso*[3]. En esta, adujo que el término de tres (3) años para presentar la declaración de uso, según dispuesto por el Artículo 4(B) de la Ley de Marcas del Gobierno de Puerto Rico, vencía el 5 de octubre de 2020. Asimismo, adujo tener un interés genuino de utilizar la marca en el comercio de Puerto Rico, por lo que solicitó se extendiera el término para presentar la declaración de uso por un (1) año.

El 15 de octubre de 2020, el Registro de Marcas notificó a la recurrente que la *Solicitud de Prórroga para Presentar Declaración de Uso* había sido aceptada[4].

Seguidamente, el 4 de octubre de 2021, Pan American presentó *Declaración de Primer Uso*[5], en la que informó, bajo pena de perjurio, que la fecha de primer uso de la marca "NURISH" en el comercio fue el 1 de mayo de 2018 e incluyó fotografías del producto.

El 21 de noviembre de 2022, el Registro de Marcas notificó a la recurrente la primera *Acción Administrativa para Declaración de Primer Uso*[6], en la que indicó que el registro de la marca no procede debido a lo siguiente:

> **La fecha de primer uso resulta ser una fecha anterior a la prórroga solicitada (5 de octubre de 2020) y <u>donde declaró bajo pena de perjurio que a esa fecha aún no</u>**

---

[1] Apéndice del recurso, págs. 1-2.
[2] Apéndice del recurso, pág. 14.
[3] Apéndice del recurso, pág. 18.
[4] Apéndice del recurso, pág. 20-21.
[5] Apéndice del recurso, pág. 24-28.
[6] Apéndice del recurso, págs. 29-33.

**había utilizado la marca. Tal y como establece la Regla 41, el Solicitante tenía <u>un (1) año para acreditar que comenzó y está utilizando la Marca en el comercio dentro de este término adicional.</u>**

**El Solicitante debe aclarar la fecha de Primer Uso ya que la fecha de <u>1 de mayo de 2018</u> no es posible. <u>La fecha de primer uso debe ser posterior a la Solicitud de la Prórroga y dentro de la misma, tal y como establece el Reglamento. La otra alternativa es presentar una enmienda a la solicitud con el fin de incluir una fecha de uso previo a la presentación.</u>**

[…][7] (Énfasis en el original)

Inconforme, el 22 de mayo de 2023, Pan American presentó *Respuesta a la Acción Administrativa*[8]. Alegó que la interpretación de la Regla 41 del Reglamento de Procedimientos del Registro de Marcas del Departamento de Estado (Reglamento 8075) es errada, debido a que la Ley Núm. 169 de 16 de diciembre de 2009, según enmendada, conocida como la Ley de Marcas del Gobierno de Puerto Rico (Ley Núm. 169-2009)[9] y su Reglamento, solo exige que se presente prueba que acredite que se comenzó a utilizar la marca en el mercado.

El 30 de mayo de 2023, el Registro de Marcas emitió una *Segunda Acción Administrativa para Declaración de Primer Uso*[10], y reiteró su determinación. En específico, sostuvo que la fecha de primer uso debe ser posterior a la prórroga solicitada.

Posteriormente, el 28 de agosto de 2023, Pan American presentó su segunda *Respuesta a la Acción Administrativa*[11], la cual fue rechazada por el Registro de Marcas[12].

El 6 de septiembre de 2023, el Registro de Marcas emitió una *Tercera Acción Administrativa para Declaración de Primer Uso* [13,] en la que sostuvo que el registro de la marca no procede. Añadió que

---

[7] Apéndice del recurso, pág. 31.
[8] Apéndice del recurso, págs. 38-65.
[9] 10 LPRA sec. 223 *et seq.*
[10] Apéndice del recurso, págs. 66-70.
[11] Apéndice del recurso, págs. 71-100.
[12] Apéndice del recurso, págs. 101-103.
[13] Apéndice del recurso, págs. 104-108.

los argumentos presentados por la recurrente son errados en derecho y no satisficieron al Oficial Examinador.

Luego de una solicitud de prórroga autorizada[14], el 5 de febrero de 2024, Pan American presentó respuesta[15] a la *Tercera Acción Administrativa para Declaración de Primer Uso*. En esta, señaló que el Oficial Examinador del Registro de Marcas no presentó evidencia, análisis ni fundamento en derecho para justificar su conclusión.

Así las cosas, el 12 de febrero de 2024, el Registro de Marcas emitió una *Acción Final*[16], mediante la cual denegó la declaración de primer uso. En lo pertinente, concluyó como sigue:

> En sus respuestas a las tres acciones administrativas el Solicitante hace una interpretación errónea del Reglamento para sostener que la fecha de primer uso del 1 de mayo de 2018 es hábil. A este Oficial Examinador no le satisfacen los argumentos del Solicitante y de ser hábil esa fecha entonces la aprobación de la prórroga fue otorgada sin justa causa y no procedía la misma.

En desacuerdo con lo resuelto, el 4 de marzo de 2024, Pan American presentó *Solicitud de Reconsideración*[17]. El Registro de Marcas no tomó acción alguna con relación a la solicitud presentada, por lo que se entiende que fue rechazada de plano.

Insatisfecho aún, el 16 de abril de 2024, Pan American presentó el recurso de epígrafe, en el que formuló los siguientes señalamientos de error:

> A. ERRÓ EL REGISTRO DE MARCAS Y ACTUÓ DE FORMA *ULTRA VIRES* AL INTERPRETAR ERRÓNEA Y RESTRICTIVAMENTE LA LEY DE MARCAS Y SU REGLAMENTO, A LOS EFECTOS DE QUE, CUANDO SE SOLICITA UNA PRÓRROGA PARA PRESENTAR LA DECLARACIÓN DE PRIMER USO DE UNA MARCA SOLICITADA SIN USO, LA FECHA DE PRIMER USO NO PUEDE SER ANTERIOR A LA FECHA EN QUE SE SOLICITÓ LA PRÓRROGA.
>
> B. ERRÓ EL REGISTRO DE MARCAS AL INCUMPLIR CON SU DEBER DE REEXAMINACIÓN CADA VEZ QUE PAN AMERICAN PRESENTÓ RESPUESTAS A LAS ACCIONES ADMINISTRATIVAS EMITIDAS POR EL EXAMINADOR,

---

[14] Apéndice del recurso, págs. 109-114.
[15] Apéndice del recurso, págs. 115-139.
[16] Apéndice del recurso, págs. 143-146.
[17] Apéndice del recurso, págs. 147-165.

JUNTO CON LAS CUALES PRESENTÓ INFORMACIÓN, EVIDENCIA, Y PLANTEAMIENTOS DE DERECHOS ADICIONALES QUE NO FUERON CONSIDERADOS.

El 31 de mayo de 2024, el Registro de Marcas presentó *Escrito en Cumplimiento de Resolución*. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### -A-

La Ley Núm. 169 de 16 de diciembre de 2009, según enmendada, conocida como la Ley de Marcas del Gobierno de Puerto Rico (Ley Núm. 169-2009) regula todo lo relacionado al derecho marcario en Puerto Rico[18]. Dicho estatuto le confiere a una persona o corporación un derecho propietario sobre una marca, cuando la misma es utilizada en conexión con un producto o servicio[19]. Una "marca" constituye "todo signo o medio que sirva para distinguir en el mercado productos o servicios de una persona, al igual que de productos o servicios de otra persona. Es decir, una marca constituye todo elemento distintivo que permita diferenciar un producto o servicio de otros en el mercado.

La Ley Núm. 169-2009 establece que el derecho a una marca se adquiere de una de las siguientes formas: (1) mediante el uso de la marca en el comercio, o (2) por el registro de esta, basado en la intención bona fide de utilizar la misma en el comercio[20]. Por "uso en el comercio" se entiende el "[u]so legal de buena fe de una marca en el comercio de Puerto Rico"[21]. No obstante, "[e]l derecho propietario de una marca es obtenido por su uso y no por su inscripción"[22].

---

[18] 10 LPRA sec. 223 *et seq.*; *SLG Bedrosian-Corretjer v. Nestlé et al.*, 205 DPR 1117, 1131 (2020).

[19] *Arribas v American Home*, 165 DPR 598 (2005); *Posadas de P.R. v. Sands Hotel*, 131 DPR 21, 35 (1992).

[20] 10 LPRA sec. 223a.

[21] 10 LPRA sec. 223s.

[22] *Posadas de P.R. v. Sands Hotel, supra*, pág. 35.

El Art. 4(B) de la Ley Núm. 169-2009, *supra,* regula lo concerniente al registro de marcas sin uso. Al respecto, el referido estatuto dispone lo siguiente:

B. *Marcas sin uso*:
Una persona que tenga la intención bona fide de utilizar una marca en el comercio de Puerto Rico puede solicitar el registro de la marca presentando:
1. Una solicitud dirigida al Secretario, firmada por el solicitante o su representante, en la forma que mediante reglamentación disponga el Secretario.
2. Una declaración bajo pena de perjurio, al efecto de que:
i) el solicitante tiene la intención bona fide de utilizar la marca en el comercio;
ii) ninguna otra persona, según su mejor conocimiento y creencia, tiene derecho a usar la marca en Puerto Rico; y
iii) la descripción y especímenes o dibujos, de ser aplicables, representan la marca cuyo registro se solicita.
3. Espécimen de la marca, tal como se usará en el comercio, en la forma y cantidad que mediante reglamentación disponga el Secretario.
4. La cantidad correspondiente en pago de los derechos de radicación que mediante reglamentación disponga el Secretario. Dentro de los tres (3) años contados a partir de la fecha de radicación de la solicitud de registro de una Marca sin uso en el Comercio de Puerto Rico, el titular registral, como condición para mantener vigente dicho registro, tendrá que acreditar, mediante declaración bajo pena de perjurio y con evidencia de uso, que comenzó a utilizar y está utilizando la Marca en el Comercio de Puerto Rico. Transcurrido el referido término de tres (3) años sin que el titular registral haya acreditado bajo pena de perjurio el uso de la Marca en el Comercio en Puerto Rico, dicho registro se dará por cancelado.
No obstante, lo anterior, el titular registral de una Marca sin uso podrá solicitar, antes de vencido el término de tres (3) años aquí establecido y por justa causa, una prórroga de hasta un máximo de un (1) año para acreditar el uso requerido por este inciso B, según disponga el Secretario por reglamentación[23].

En cuanto a la solicitud de prórroga para presentar Declaración de Primer Uso, el *Reglamento de Procedimientos del Registro de Marcas del Departamento de Estado del Gobierno de Puerto Rico* del 19 de septiembre de 2011 (Reglamento 8075), dispone lo siguiente:

Regla 41. Prórroga para presentar Declaración de Primer Uso

A. El titular registral de una Marca sin uso podrá solicitar, antes de vencido el término establecido en la Ley, para presentar la Declaración de Primer Uso y por justa causa, una prórroga de hasta un máximo de un (1) año para

---

[23] 10 LPRA sec. 223b.

acreditar que comenzó y está utilizando la Marca en el Comercio dentro de este término adicional. [...]

B. La petición del término adicional de un (1) año deberá presentarse por escrito.

**-B-**

Es norma reiterada que las decisiones de un foro administrativo gozan de una presunción de corrección y como tal merecen gran deferencia por parte de los tribunales. De igual forma, "las conclusiones de estas agencias merecen gran deferencia por parte de los tribunales, por lo que debemos ser cuidadosos al intervenir con las determinaciones administrativas"[24].

Esta deferencia tiene su fundamento en la vasta experiencia y el conocimiento especializado que ostentan las agencias acerca de los asuntos que les son encomendados[25]. Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia[26]. Corresponde a los tribunales analizar las determinaciones de hechos de los organismos administrativos amparados en esa deferencia y razonabilidad[27].

Ahora bien, esta norma de deferencia de ningún modo puede afectar el alcance de la facultad de revisión de los tribunales[28]. La Ley Núm. 38 de 30 de junio de 2017, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (Ley Núm. 38-2017)[29], dispone el alcance de la revisión judicial de las determinaciones de las agencias. En lo pertinente, establece que:

> El Tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio. Las determinaciones de hechos de las decisiones de las agencias

---

[24] *González Segarra et al. v. CFSE*, 188 DPR 252 (2013); *Empresas Loyola v. Com. Ciudadanos*, 186 DPR 103 (2012); *Acarón et al. v. D.R.N.A.*, 186 DPR 564 (2012).
[25] *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79, 87-89 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).
[26] *Íd.*
[27] *González Segarra et al. v. CFSE, supra.*
[28] *Padín Medina v. Adm. Sist. Retiro*, 171 DPR 950 (2007).
[29] 3 LPRA sec. 9601, *et seq.*

serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos[30].

En lo concerniente a las conclusiones de derecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno[31]. De ordinario, al revisar las decisiones de las agencias, los tribunales debemos brindar gran deferencia y respeto a las interpretaciones del estatuto que sean efectuadas por el organismo facultado por ley para velar por su administración y cumplimiento. En *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial, a saber:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales.

La revisión judicial de decisiones administrativas se debe limitar a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituye un abuso de discreción[32].

**-C-**

El proceso mediante el cual se interpretan las leyes tiene como propósito precisar qué es lo que ha querido decir el legislador[33]. Nuestro ordenamiento jurídico, consigna determinadas normas de hermenéutica legal las que, en mayor o menor grado, se imponen

---

[30] 3 LPRA sec. 9675.

[31] *González Segarra et al. v. CFSE, supra*; *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 513 (2011).

[32] *Rebollo v. Yiyi Motors*, 161 DPR 69 (2004); *Fuertes y otros v. A.R.Pe.*, 134 DPR 947, 953 (1993).

[33] *Pueblo v. Roche*, 195 DPR 791 (2016) citando a Elfren Bernier y Cuevas Segarra, *op. cit.*, pág. 241.

como principios rectores del ejercicio de la función adjudicativa de los tribunales[34].

Así pues, "[a]l interpretar una disposición específica de una ley, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener".

Por su parte, la interpretación de un estatuto debe observar y acatar el propósito perseguido en su implementación. A estos efectos, y siguiendo la misma filosofía de hermenéutica legal, las diferentes secciones de un estatuto deberán interpretarse en conjunto, armoniosa, más no aisladamente, para evitar resultados desatinados, confusos o absurdos[35]. Cualquier interpretación de ley que conduzca a una conclusión absurda, ha de ser rechazada, pues al ejercer nuestra función interpretativa, estamos obligados a armonizar, en la medida posible, todas las disposiciones de ley involucradas en aras de obtener un resultado más sensato, lógico y razonable[36].

**III.**

En su recurso, Pan American entiende que la interpretación que realiza el Registro de Marcas a la Ley Núm. 169-2009 y el Reglamento 8075 es restrictiva y errada porque ninguna de ellas especifica que, la fecha de primer uso tenga que estar comprendida dentro del periodo de prórroga solicitado y mucho menos prohíbe que sea anterior al mismo.

Por su parte, el Registro de Marcas sostiene que la decisión tomada es razonable y ceñida a la normativa aplicable. Sostuvo que el beneficio de la prórroga para demostrar que se utilizó por primera

---

[34] *Consejo Titulares v. Gómez Estremera et al.,* 184 DPR 407 (2012). *Const. José Carro v. Mun. Dorado,* 186 DPR 113 (2012).
[35] *PRTC v. J. Reg. Tel. de PR,* 151 DPR 269 (2000).
[36] *Mun. San Juan v. Banco Gub. Fomento,* 140 DPR 873, 884 (1996).

vez la marca es para demostrar que se utilizó específicamente dentro de ese término adicional, no como lo hizo la recurrente, quien utilizó la marca dentro del término ordinario disponible para reportarlo. Además, señala que la recurrente no logró rebatir la presunción de corrección y legalidad que cobija la *Acción Final* recurrida.

Por estar estrechamente relacionados, atenderemos los señalamientos de error de forma conjunta. Veamos.

Obsérvese que la política pública establecida en la Ley Núm. 169-2009 procura flexibilizar el marco legal aplicable al proceso de registro de una marca, encaminado a la promoción y desarrollo de la economía de Puerto Rico, así como impartir celeridad al trámite administrativo de calificación. Cónsono con ello, la Ley Núm. 169-2009 y el Reglamento 8075 establecen el procedimiento a seguir para registrar una marca sin uso en el comercio.

Conforme surge del expediente apelativo, el 3 de octubre de 2017, la recurrente presentó ante el Registro de Marcas una *Solicitud de Registro de Marca* para la marca sin uso "NURISH". Oportunamente, el 5 de octubre de 2020, antes de vencer el término de tres (3) años para presentar la correspondiente declaración de uso, la recurrente presentó una *Solicitud de Prórroga para Presentar Declaración de Uso*, la cual fue aceptada por el Registro de Marcas. Luego, el 4 de octubre de 2021, dentro del término de un (1) año de prórroga, la recurrente informó que la fecha de primer uso de la marca "NURISH" en el comercio fue el 1 de mayo de 2018.

En vista de lo anterior, y el contexto en que se suscitaron los incidentes ante nuestra consideración, concluimos que Pan American cumplió cabalmente con los requisitos establecidos por el ordenamiento jurídico prevaleciente. No obstante, las acciones administrativas del Registro de Marcas no fueron razonables ni respondieron a los argumentos legales argüidos por la recurrente.

Recientemente, en *OEG v. Martínez Giraud, supra,* nuestro Tribunal Supremo reiteró que:

> [E]l criterio administrativo no podrá prevalecer cuando la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual se aprobó la legislación y la política pública que promueve. En ese sentido, la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia[37].

Como indicáramos previamente, el mandato de la Ley Núm. 169-2009, *supra,* va dirigido a fomentar la economía e incentivar pequeñas y medianas empresas en proceso de expansión comercial. Es decir, a través de la determinación recurrida el Registro de Marcas le impuso cargas adicionales a Pan American, las cuales son incompatibles con la esencia de la Ley Núm. 169-2009, *supra.* Por tanto, concluimos que los errores señalados por la recurrente fueron cometidos. En consecuencia, resolvemos que erró el Registro de Marcas al no aceptar la *Declaración de Primer Uso* presentada por Pan American.

**IV.**

Por los fundamentos expuestos, **revocamos** la *Acción Final* recurrida. En consecuencia, ordenamos al Registro de Marcas aceptar la *Declaración de Primer Uso* de la marca "NURISH" presentada por Pan American.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[37] *OEG v. Martínez Giraud, supra,* págs. 90-91, citando a *Moreno Lorenzo y otros v. Depto. Fam.,* 207 DPR 833 (2021).